United States District Court
Southern District of Texas
**ENTERED**
April 02, 2021
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## MCALLEN DIVISION

| | | |
|---|---|---|
| ROEL CESAR MORENO (TDCJ #01014131), | § § § | |
| Petitioner, | § § | |
| VS. | § § | CIVIL ACTION NO. 7:20-cv-00231 |
| BOBBY LUMPKIN, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION, | § § § § § | |
| Respondent. | § § | |

## <u>REPORT & RECOMMENDATION</u>

Petitioner, Roel Cesar Moreno, a state prisoner proceeding *pro se*, initiated this action in August 2020 by filing a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Dkt. No. 1.)   This case was referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b).   On November 16, 2020, Respondent filed a Motion for Summary Judgment. (Dkt. No. 4.)   On December 18, 2020, Petitioner filed a response to Respondent's Motion for Summary Judgment.   (Dkt. No. 7.)

In brief summary, Petitioner seeks review of being found guilty by a jury in Starr County, Texas, of capital murder in November 2000, for a crime that occurred in January of that year, and his subsequent sentence to life imprisonment. *See* Tex. Penal Code Ann. §§ 19.03 (a)(2); 12.31(a)(2).   Petitioner seeks review at this stage based on claims of actual innocence and

ineffective assistance of both trial and habeas counsel.   Respondent argues that the claims are time-barred from habeas review; Petitioner claims they are not and seeks federal habeas review.

After a careful review of the filings, record, and relevant law, and for reasons set forth below, the claims are time-barred from review; therefore, the undersigned recommends that Respondent's Motion for Summary Judgment (Dkt. No. 4) be **GRANTED**.   It is further recommended that Petitioner's § 2254 petition (Dkt. No. 1) be **DISMISSED** with prejudice. Petitioner's § 2254 case should be closed.

Finally, it is further recommended that the District Court **DECLINE** to issue a Certificate of Appealability in this matter.

## BACKGROUND

### I.   Criminal Prosecution and Procedural History

#### a.   Trial

On January 12, 2000, Rene Santiago Gonzalez did not make it home in time for lunch as expected.   (Dkt. No. 5-15 at 21; Trial Tr. vol. 7, 73, Nov. 2, 2000.)[1]   He was still not home when it was time to pick up his children from the local high school, where one son was a student and the other son, a teacher.   (Dkt. No. 5-14 at 9; Trial Tr. vol. 5, 27, Oct. 31, 2000.)   Gonzalez's family was immediately concerned.   According to Gonzalez's son, Alejandro Gonzalez, his father would typically be home by 5:00 PM or 7:00 PM at the latest.   (*Id.* at 9; Trial Tr. vol. 5, 27, Oct. 31, 2000.)   *He would always check in with us before going too far*, they said.   (Dkt. Nos. 5-14 at 9,

---

[1] Unless otherwise noted, the facts and procedural history are taken from the state court record filed in the case.   (Dkt. Nos. 5, 6.)   Docket Numbers 5-14, 5-15, and 5-16 are transcripts of the trial proceedings.   Testimony was presented to the jury October 31 – November 2, 2000.   A verdict of guilty as to capital murder was returned on November 3, 2000, and Petitioner was sentenced to life imprisonment by the trial court on the same day.   Citations to Docket Numbers 5-14, 5-15, and 5-16 will set forth the corresponding transcript citation contained within each respective docket filing.

5-15 at 20; Trial Tr. vol. 5, 27, Oct. 31, 2000; Trial Tr. vol. 7, 70-72, Nov. 2, 2000.)   That night, Gonzalez's family called the police to report him missing.   (Dkt. No. 5-14 at 10; Trial Tr. vol. 5, 30, Oct. 31, 2000.)

A week later, on January 19, 2000, Gonzalez's body was found at a trash dump site in Roma, Texas.   (Dkt. No. 5-14 at 58; Trial Tr. vol. 5, 220, Oct. 31, 2000.)   Gonzalez suffered a gunshot to the chest.   (Dkt. No. 5-14 at 119; Trial Tr. vol. 6, 194, Nov. 1, 2000.)   His car was missing.   (*Id.* at 11; Trial Tr. vol. 5, 35, Oct. 31, 2000.)   His wallet was missing.   His pockets were pulled inside out and emptied.   (*Id.* at 62; Trial Tr. vol. 5, 237, Oct. 31, 2000.)

Petitioner, Roel Cesar Moreno, was the last person to be seen with Gonzalez.   (*Id.* at 82-83; Trial Tr. vol. 6, 48-49, Nov. 1, 2000.)   On the morning of January 12, Petitioner hired Gonzalez, a taxi driver, for a ride to Roma Middle School where Petitioner planned to speak with his sister before he left town.   (*Id.* at 38; Trial Tr. vol. 5, 139, Oct. 31, 2000.)   Petitioner's sister was wearing a gold chain that belonged to Petitioner and he wanted it back.   (*Id.* at 37; Trial Tr. vol. 5, 137, Oct. 31, 2000.)

Gonzalez drove Petitioner to the middle school, and Petitioner went inside the school to find his sister.   (Dkt. No. 5-14 at 23; Trial Tr. vol. 5, 82-83, Oct. 31, 2000.)   Gonzalez waited outside.   Several individuals at the school saw Petitioner arrive with and leave with Gonzalez, including Martin Mascorro and Graciela Garza, security guards for the Roma Independent School District, Reynaldo Alaniz, a Starr County juvenile probation officer, and Carlos Guzman, the principal for Roma Middle School.   (*Id.* at 16, 17, 22-23, 30; Trial Tr. vol. 5, 54-55, 59, 80-81, 110, Oct. 31, 2000.)   The individuals gave varying accounts as to Petitioner's demeanor that morning.   (*Id.* at 20, 34; Trial Tr. vol. 5, 72, 125, Oct. 31, 2000.)   He was either calm and compliant when Principal Guzman told him that he could not see his sister, or he was upset as he

got back into the taxi with Gonzalez.   (*Id.* at 21, 34; Trial Tr. vol. 5, 74, 125, Oct. 31, 2000.)

Principal Guzman cannot recall what Petitioner was wearing that day, but the three other witnesses from the school, Mascorro, Alaniz, and Garza, agreed that Petitioner was wearing a black, sleeveless tee-shirt.   Petitioner's Trial Counsel,[2] however, made an effort to highlight that witnesses did not give officers all the details about Petitioner's shirt until eight or nine months after seeing Petitioner on January 12, 2000.   (*Id.* at 21, 28, 33; Trial Tr. vol. 5, 76, 101-03, 118-21, Oct. 31, 2000.)

According to Francisca Castillo, she also saw Petitioner in the morning on January 12, or in the days prior (she could not remember the exact date), and he asked her for a ride to school so he could give his sister some money.   (Dkt. No. 5-14 at 55; Trial Tr. vol. 5, 206, Oct. 31, 2000.) Castillo told Petitioner that she did not have her car, so she could not give him a ride.   Before leaving, Petitioner showed Castillo a gun he had under his shirt.   (*Id.* at 55; Trial Tr. vol. 5, 207, Oct. 31, 2000.)   Castillo described Petitioner as wearing a gray, sleeveless shirt when she saw him – a description that is inconsistent with other evidence that Petitioner wore a black tee-shirt on January 12.   (*Id.* at 55; Trial Tr. vol. 5, 206, Oct. 31, 2000.)

Around noon on January 12, Petitioner arrived at the home of his neighbor, Irasema De La Cruz Garcia.   (Dkt. No. 5-14 at 45; Trial Tr. vol. 5, 167-68, Oct. 31, 2000.)   He was no longer with Gonzalez.   (*Id.* at 48; Trial Tr. vol. 5, 178, Oct. 31, 2000.)   Garcia recalls Petitioner crying. (*Id.* at 48; Trial Tr. vol. 5, 180, Oct. 31, 2000.)   He was nervous.   (*Id.* at 46; Trial Tr. vol. 5, 171, Oct. 31, 2000.)   He told her he "had done something that he wasn't supposed to do."   (*Id.*; Trial Tr. vol. 5, 172, Oct. 31, 2000.)   He "shot somebody."   (*Id.* at 47; Trial Tr. vol. 5, 174, Oct. 31,

---

[2] Petitioner was represented at trial by G. Allen Ramirez (Trial Counsel); for appeal, by John Gilmore (Appellate Counsel); and for his first habeas petition in state court, by Randy Schaffer (Habeas Counsel).

2000.)  He asked her for money.  (*Id.* at 46; Trial Tr. vol. 5, 172, Oct. 31, 2000.)  She thought he had a gun beneath his clothes[3] (*id.* at 47; Trial Tr. vol. 5, 175, Oct. 31, 2000) and she noticed "small little spots" of blood on his shirt (*id.* at 50; Trial Tr. vol. 5, 186, Oct. 31, 2000), which she described as a light-colored shirt.  (Dkt. No. 5-14 at 51; Trial Tr. vol. 5, 192, Oct. 31, 2000.) When Garcia told Petitioner that she did not have any cash, he left in a car that she had never seen before.  (*Id.* at 47; Trial Tr. vol. 5, 176, Oct. 31, 2000.)  The description Garcia gave of this new car did not exactly match the description of Gonzalez's missing car.[4]  (*Id.* at 52; Trial Tr. vol. 5, 197, Oct. 31, 2000.)  When Petitioner left, Garcia found Petitioner's mother and told her about the upsetting conversation she just had with Petitioner.  (*Id.* at 48; Trial Tr. vol. 5, 180, Oct. 31, 2000.)

In the days after Petitioner was with Gonzalez, Petitioner traveled to Mexico where he spent time with friends at a place called Cesar's Bar.  (*Id.* at 86; Trial Tr. vol. 6, 62, Nov. 1, 2000.) Upon his arrival back to his home, his aunt told him that the Roma police needed to talk to him. (Dkt. No. 5-15 at 29; Trial Tr. vol. 7, 107-08, Nov. 2, 2000.)  That same day, Petitioner called the Roma Police Department.  The police asked Petitioner to come in for questioning.  (*Id.* at 29-30; Trial Tr. vol. 7, 108-09, Nov. 2, 2000.)  Petitioner did so and he was cooperative: He opted to speak with investigators without an attorney and he agreed to give blood and hair samples for DNA testing.  (Dkt. No. 5-14 at 79, 85; Trial Tr. vol. 6, 33, 57-58, Nov. 1, 2000.)  Felipe Garcia, a Roma police officer, and the lead investigator on the case, noted that Petitioner came into the

---

[3] During the direct examination, Garcia stated that she thought Petitioner had a gun.  On cross-examination, she was asked whether she actually saw Petitioner with a gun that day.  She responded, "No."  (Dkt. No. 5-14 at 53; Trial Tr. vol. 5, 199, Oct. 31, 2000.)

[4] Garcia testified that Petitioner drove away in a beige car, but Gonzalez's son testified that the color of the missing vehicle was two-tones of gray.  (Dkt. No. 5-14 at 9; Trial Tr. vol. 5, 26, Oct. 31, 2000.)

station with cuts and bruises on his hands. (*Id.* at 99; Trial Tr. vol. 6, 116, Nov. 1, 2000.) When Investigator Garcia looked into Petitioner's alibi, he could not find any establishment called Cesar's Bar. (*Id.* at 87; Trial Tr. vol. 6, 65, Nov. 1, 2000.) Notably, however, a private investigator, Federico Martinez, who testified on behalf of Petitioner at trial, stated that Cesar's Bar was easy to find and even offered up photos of the bar at trial. (Dkt. No. 5-15 at 31-32; Trial Tr. vol. 7, 114-19, Nov. 2, 2000.)

Three days later, on January 18, 2000, officers arrested Petitioner and searched Petitioner's home with the consent of Petitioner's mother. (Dkt. No. 5-14 at 81; Trial Tr. vol. 6, 43, Nov. 1, 2000.) Police did not find any weapon or evidence that connected Petitioner to Gonzalez's murder. (*Id.*; Trial Tr. vol. 6, 43, Nov. 1, 2000.) On the following day, authorities found Gonzalez's body.

Evidence found at the dump site included a black, sleeveless tee-shirt, Gonzalez's body, and tire tracks. Gonzalez was found partially undressed with his pockets turned inside out, wearing a gold ring that he always wore. (Dkt. No. 5-14 at 60, 62; Trial Tr. vol. 5, 226-27, 237, Oct. 31, 2000.) He was still wearing his watch. Inside his shoes, Gonzalez had $105.[5] (*Id.* at 63; Trial Tr. vol. 5, 239-40, Oct. 31, 2000.) According to Gonzalez's wife, Juanita Gonzalez, she gave $200 to her husband before he left on January 12. She was able to determine that her husband spent at least $25 at the mechanic before he went missing. (Dkt. No. 5-15 at 20; Trial Tr. vol. 7, 72, Nov. 2, 2000.) Gonzalez's car was never found. (Dkt. No. 5-14 at 11; Trial Tr. vol. 5, 35, Oct. 31, 2000.)

Casts were made of the tire tracks found at the dump site. Raul Guajardo, a criminalist

---

[5] Alejandro Gonzalez, Gonzalez's son, testified that it was not his father's custom to keep money in his shoe. (Dkt. No. 5-14 at 13; Trial Tr. vol. 5, 42, Oct. 31, 2000.)

for the Texas Department of Public Safety, compared the casts to the type of tire that Gonzalez had on his car.  (*Id.* at 108; Trial Tr. vol. 6, 151, Nov. 1, 2000.)   Guajardo determined that the "cast compressions from the scene exhibited the same general characteristics and dimensions as the tire" used for comparison.  (*Id.*; Trial Tr. vol. 6, 152, Nov. 1, 2000.)

A second criminalist, Alex Madrigal, and a pathologist, Dr. Fulgencio Salinas, explained the autopsy and DNA evidence discovered during the investigation.  (Dkt. Nos. 5-14 at 116-127, 5-15 at 5-16[6]; Trial Tr. vol. 6, 184-225, Nov. 1, 2000; Trial Tr. vol. 7, 9-55, Nov. 2, 2000.)   Salinas explained that Gonzalez suffered a gunshot wound to the chest that would have immediately paralyzed him and caused him to die shortly thereafter.  (Dkt. No. 5-14 at 119; Trial Tr. vol. 6, 193, Nov. 1, 2000.)   Additionally, he explained that, by the time the autopsy was performed on January 20, the body had been decomposing for 7-10 days.  (*Id.* at 118; Trial Tr. vol. 6, 189, Nov. 1, 2000.)   Madrigal detailed how the black tee-shirt found at the dump site fourteen feet from Gonzalez's body (*id.* at 62; Trial Tr. vol. 5, 234, Oct. 31, 2000) contained Gonzalez's blood (Dkt. No. 5-15 at 7; Trial Tr. vol. 7, 17-18, Nov. 2, 2000) and a single hair belonging to an unidentified individual.  (*Id.* at 12; Trial Tr. vol. 7, 40, Nov. 2, 2000.)   The DNA analysis of the black tee-shirt did not result in anything that could connect the shirt to Petitioner.  (*Id.* at 12; Trial Tr. vol. 7, 39, Nov. 2, 2000.)   Petitioner's DNA was not found on Gonzalez, in Gonzalez's out-turned pockets,[7] nor anywhere at the dump site.  (*Id.* at 5; Trial Tr. vol. 7, 11, Nov. 2, 2000.)

Four to five miles from the dump site where Gonzalez's body was found, a Starr County

---

[6] Referencing page numbers in Dkt. No. 5-15 and not Dkt. No. 5-16.

[7] Alex Madrigal, the DNA analyst, testified that a DNA profile could not be obtained from Gonzalez's clothing.  The analyst explained that it could be because there was not enough DNA present to begin with to obtain the DNA profile.  Or, alternatively, the bodily fluids, resulting from the body's decomposition process, could also have affected the lack of DNA being present for collection.  (Dkt. No. 5-15 at 5; Trial Tr. vol. 7, 11, Nov. 2, 2000.)

truck driver, Raudel Garza, found Gonzalez's wallet.   (Dkt. No. 5-14 at 104; Trial Tr. vol. 6, 133-36, Nov. 1, 2000.)   There was no cash in the wallet, but it contained a driver's license and social security card that belonged to Gonzalez.   (*Id.* at 76; Trial Tr. vol. 6, 22, Nov. 1, 2000.)   Garza turned the wallet over to the Roma police, but it was never checked for fingerprints.   (*Id.* at 93; Trial Tr. vol. 6, 91, Nov. 1, 2000.)

In closing, the prosecution highlighted the two pieces of convincing evidence it had: Petitioner was the last person seen with Gonzalez, and Petitioner's neighbor testified that Petitioner confessed to shooting someone on January 12, 2000.   In response, the defense detailed a list of unanswered questions, *Why didn't the body have any of Petitioner's DNA?   If this was a robbery, why would Petitioner not take the ring off Gonzalez's hand?   Why didn't Roma police check the wallet for fingerprints?*   After closing arguments and shortly after the jury began its deliberations, a jury member sent a communication to the Court.   (Dkt. No. 5-15 at 76; Trial Tr. vol. 8, 76-77, Nov. 3, 2000.)   The note included a tabulation of the jury votes at that time with nine of the twelve jurors favoring a capital murder conviction.   (*Id.*; Trial Tr. vol. 8, 76-77, Nov. 3, 2000.)   The Court returned the following note to the jury: "It's not necessary to inform the Court as to how the count stands.   This is confidential.   And now [the jury] can continue with the deliberations." (*Id.*; Trial Tr. vol. 8, 77, Nov. 3, 2000.)

Less than two hours after the jury submitted its preliminary tabulations to the Court, the jury announced that it reached a verdict.   (Dkt. No. 5-15; Trial Tr. vol. 8, 76-78, Nov. 3, 2000.) Ultimately, the jury found Petitioner guilty of capital murder as charged in the indictment, for committing a murder in the course of a robbery.   (*Id.*; Trial Tr. vol. 8, 78, Nov. 3, 2000); *see* Tex. Pen. Code Ann. § 19.03(a)(2).   After the reading of the jury's verdict, the presiding judge, the Honorable State District Judge Alex W. Gabert, sentenced Petitioner to confinement in the Texas

Department of Criminal Justice for life.   (*Id.* at 79; Trial Tr. vol. 8, 88-89, Nov. 3, 2000; *see also* Dkt. No. 6-13 at 10-14 (Judgment and Order of Commitment).)

    **b.   Appeal**

    Upon his conviction, Petitioner timely filed an appeal with the Fourth Court of Appeals in San Antonio on November 29, 2000.   (Dkt. No. 5-1).[8]   The appeal, in part (and relevant to this proceeding), is based on an affidavit from a juror named Nancy L. Lopez (Lopez Affidavit) and dated November 21, 2000.   (Dkt. No. 1 at 12-15.)   Lopez claims she and two other jurors voted with the majority to convict Petitioner of capital murder only after the trial court instructed the deadlocked jury that they "all had to agree on the verdict."   (*Id.* at 14.)   Additionally, she claimed that the foreperson refused to submit the jurors' questions to the judge because the foreperson, a courthouse employee, thought that other courthouse personnel would recognize her handwriting and said foreperson did not want to be a nuisance.   (*Id.*)   Lopez also set forth that jurors considered exhibits that had not been allowed into evidence.   (*Id.* at 15.)   Despite voting with the majority to convict Petitioner, Lopez claimed "she did not then, and does not now, feel the state proved its case."   (Dkt. No. 1 at 14.)

    The submitted affidavit contradicts the juror's position at the end of the trial.   Upon the jury's announcement of the verdict, Trial Counsel requested that the jury be polled.   (Dkt. No. 5-15 at 76; Trial Tr. vol. 8, 79, Nov. 3, 2000.)   When Lopez was asked, "[was the] verdict that was read by [the foreperson], your presiding juror, your verdict?", Lopez replied that it was.   (Dkt. No. 5-15 at 76; Trial Tr. vol. 8, 79, Nov. 3, 2000.)   Petitioner moved for a new trial based on jury misconduct citing the Lopez Affidavit.   (Dkt. No. 5-1 at 3).   The Fourth Court of Appeals

---

[8] Docket number 5-1 is the unpublished opinion of Petitioner's initial appeal of his state conviction; the unpublished opinion can also be found at:   *Moreno v. State*, 04-01-00203-CR, 2002 WL 491736 (Tex. App.—San Antonio Apr. 3, 2002, pet. ref'd).

determined that the Lopez Affidavit was inadmissible pursuant to Texas Rule of Evidence 606(b).[9] (Dkt. No. 5-1 at 4.)   Without the Lopez Affidavit, Petitioner's Motion was unsupported; the Fourth Court of Appeals denied Petitioner's Motion for a New Trial and subsequently affirmed the conviction on April 3, 2002.[10]   (Dkt. No. 5-1 at 5.)

In July 2002, Petitioner filed *pro se* a petition for discretionary review with the Texas Court of Criminal Appeals.   (Dkt. No. 5-8.)   In his petition, Petitioner asked that the Texas Court of Criminal Appeals reconsider the question of whether the Lopez Affidavit was admissible evidence. (*Id.* at 5.)   On September 11, 2002, the Court denied Petitioner's request for review.   (Dkt. No. 4 at 2-3; *Moreno v. State*, No. PD-0635-02 (Tex. Crim. App. 2002).)   Petitioner, who did not seek certiorari review, had a window of 90 days to file a petition for certiorari with the Supreme Court. Sup. Ct. R. 13(1).   When a petitioner chooses not to seek further review, the judgment for purposes of filing a habeas petition under the Antiterrorism and Effective Death Penalty Act of

---

[9]  Texas Rule of Evidence 606(b)(1) states the following:

> During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. *The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.*

Tex. R. Evid. 606(b)(1) (emphasis added).   The rule does allow that "[a] juror may testify: (A) about whether an outside influence was improperly brought to bear on any juror; or (B) to rebut a claim that the juror was not qualified to serve." Tex. R. Evid. 606(b)(2).

[10]  The state appellate court also denied Petitioner's claims challenging the trial court's jurisdiction and that the trial court erred in admitting three photographs of the victim and victim's son.   (Dkt. No. 5-1.)   Petitioner was represented by Appellate Counsel who filed a brief on Petitioner's behalf.   (Dkt. No. 5-4.)   Petitioner filed a supplemental *pro se* brief to the appellate court on August 7, 2001, arguing that the Lopez Affidavit sufficiently established that "other evidence" was considered by jurors and, thus, the trial court erred by denying Petitioner's motion for a new trial. (Dkt. No. 5-5.)

1996 ("AEDPA")[11] becomes final at the end of the 90-day period.   In this case, as will be explained in greater detail, judgment became final on December 10, 2002.   A year later, on December 10, 2003, the limitation period expired for the purposes of filing a federal habeas petition under AEDPA.   28 U.S.C. § 2244(d)(1)(A); *see Jimenez v. Quarterman*, 555 U.S. 113, 119-20, 129 S. Ct. 681, 172 L. Ed. 2d 475 (2009); *see also Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).[12]

### c.  Habeas Petitions

Almost four years later, on November 6, 2007, Petitioner acquired another affidavit, signed by the State's witness, Irasema De La Cruz Garcia, who testified against Petitioner at his trial.   In her affidavit (Garcia Affidavit), she attempts to discredit much of her trial testimony.   (Dkt. No. 1 at 12-13.)   According to the original statement provided to the police and signed by Garcia, Petitioner showed up at Garcia's house with blood on his clothes and he confessed to shooting someone.   (*Id.*)   At Petitioner's trial, Garcia testified consistently with her written statement: She saw Petitioner on the day he allegedly shot the decedent (Dkt. No. 5-14 at 45; Trial Tr. vol. 5, 167, Oct. 31, 2000); he asked Garcia for money (*id.* at 46; Trial Tr. vol. 5, 172, Oct. 31, 2000);

---

[11] Pub. L. No. 104-132, 110 Stat. 1214 (1996).

[12] There are both statutory and case law exceptions to this one-year limitation.   *See* 28 U.S.C. § 2244(d)(1); *see also McQuiggin v. Perkins*, 569 U.S. 383, 409-10, 133 S. Ct. 1924, 185 L. Ed. 2d. 1019 (2013) (Scalia, J., dissenting) (noting the actual innocence exception is a judicially created exception that, in the dissenter's viewpoint, is inapplicable to the congressionally passed AEDPA; in comparison, the equitable tolling exception is a historically based limitation exception that is "centuries old, and dates from a time when the separation of the legislative and judicial powers was incomplete"; therefore, it is a "reasonable assumption of genuine legislative intent" that Congress understood that equitable tolling was an historically based and appropriate exception to limitations set forth in AEDPA.)   Regardless of origin – statutory, historical, or judicial – as will be explained, none are applicable to Petitioner.

Petitioner told Garcia he had shot someone (*id.* at 47; Trial Tr. vol. 5, 174, Oct. 31, 2000); and Petitioner had blood on his clothing (*id.* at 50; Trial Tr. vol. 5, 186, Oct. 31, 2000).

Per the newly acquired affidavit, Garcia would have told Trial Counsel that portions of her statement were incorrect, "had he interviewed [her] about the circumstances surrounding the statement." (Dkt. No. 1 at 13.)  Within the affidavit, she sets forth, "I said [to the police] that Mr. Moreno told me that he had made a mistake and done something he was not supposed to do; [but] I denied that I saw bloodstains on his clothes or on an object that could have been a gun." (*Id.* at 12.)  She further claims that the police officer embellished the statement, setting forth in it that Petitioner shot someone, and that Garcia noticed bloodstains on Petitioner's shirt and an object under his clothes at his waistline.  (*Id.*)  Garcia alleged that, at trial, Trial Counsel *only* asked her whether she was romantically involved with Petitioner.[13]  (*Id.* at 13 (emphasis added).)

A review of the trial transcript reveals that Trial Counsel did ask Garcia about the circumstances surrounding her written statement.  (Dkt. No. 5-14 at 51-52; Trial Tr. vol. 5, 190-95, Oct. 31, 2000.)  Counsel asked her, "Irasema, you gave a written statement, is that correct?"; "And how many written statements did you give in this case?"; "And do you remember when you gave it?"; "Did you write this statement yourself?"; "Who wrote it?"; "Did you sign it?"; and "Where were you when you signed it?"  (*Id.* at 51-52; Trial Tr. vol. 5, 192, 195, Oct. 31, 2000.)  Additionally, the transcript shows that Trial Counsel said to Garcia, "You know that all you have to do is tell the truth."  (*Id.* at 51; Trial Tr. vol. 5, 190, Oct. 31, 2000.)  He asked her, "Do you know that?" to which she responded, "Yes."  (*Id.*; Trial Tr. vol. 5, 190, Oct. 31, 2000.)  From

---

[13] Garcia, who was 21 when she testified, was Petitioner's neighbor.  She had known him for 17 to 18 years, since they were children, and she did not want to testify.  (Dkt. No. 5-14 at 45; Trial Tr. vol. 5, 166, Oct. 31, 2000.)  Petitioner was nineteen years old when he was convicted.  (Dkt. No. 6-7 at 7-8.)  When asked whether she liked Petitioner, Garcia responded, "…I would consider him like my brother."  (Dkt. No. 5-14 at 53; Trial Tr. vol. 5, 199, Oct. 31, 2000.)

there, as noted, she went on to testify that she had seen blood on Petitioner's shirt. (*Id.*; Trial Tr. vol. 5, 190-191, Oct. 31, 2000.)

Shortly after the Garcia Affidavit was executed, Petitioner filed his first state application for habeas review on December 10, 2007. (Dkt. No. 6-3 at 2.) Petitioner was represented by Habeas Counsel and, it appears based on Petitioner's claims, an investigator was hired to assist Petitioner with this application. (Dkt. No. 6-7 at 19.) Petitioner claimed ineffective assistance of Trial Counsel, alleging (1) counsel failed to request a jury instruction on the lesser included offense of felony murder[14]; and (2) counsel failed to "conduct an adequate investigation and discover evidence that would impeach the key prosecution witness," Irasema De La Cruz Garcia. (*Id.*) According to the habeas application, Habeas Counsel hired an investigator who obtained the Garcia Affidavit. (*Id.* at 31-32.) On November 5, 2008, the Court of Criminal Appeals denied Petitioner's first application for habeas without written order. (Dkt. No. 6-7 at 2.) The Supreme Court of the United States denied the petition for a writ of certiorari on April 20, 2009. (Dkt. No. 6-6 at 2.) Following the denial of Petitioner's first state application for habeas review, Petitioner requested that the Texas Court of Criminal Appeals reconsider on its own initiative the denial of relief for Petitioner. (Dkt. No. 6-3.) In his request to the Court, Petitioner recognized that the limitation period for filing a § 2254 claim had expired. (*Id.* at 4 (Petitioner "cannot proceed to federal court because the deadline has expired under the AEDPA.").) No action was taken by the Court of Criminal Appeals in response to Petitioner's request that the Court reconsider its denial of Petitioner's habeas relief. (*Id.*)

On February 4, 2019, close to ten years after the first petition, Petitioner filed a second application in state court for habeas relief. In it, Petitioner set forth several grounds for relief,

---

[14] *See* Tex. Penal Code Ann. 19.02(b)(3) (West 2019).

including some claims that he sets forth in his present petition for habeas relief.   First, Petitioner claimed actual innocence.   (Dkt. No. 6-9 at 9.)   He explained that the Lopez and Garcia Affidavits constituted newly presented evidence.   "No reasonable juror would have found [Petitioner] guilty in light of the 'newly presented evidence,'" he claimed.   (*Id.*)   Further, he claimed that he was excused from the procedural default rule based on his credible showing of actual innocence.   (*Id.* at 28.)   In Ground Two, Petitioner claimed his Habeas Counsel failed to include a *Brady*[15] claim in Petitioner's first state application for habeas relief.   (*Id.* at 12.) According to Petitioner, a *Brady* claim was justified because information regarding Garcia's trial testimony was concealed from Petitioner.   (*Id.*)   In Ground Three, Petitioner alleged that the State failed to disclose exculpatory evidence.   (Dkt. No. 6-9 at 13.)   In Ground Four, Petitioner alleged that the trial court abused its discretion when it failed to give the jury a proper *Allen* charge.[16]   (*Id.* at 15.)   Petitioner alleged that, instead, the Court instructed the jury, "all need to agree on the same verdict."[17]   (*Id.*)   In Ground Five of the habeas application, Petitioner alleged that his Appellate

---

[15] In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the Supreme Court held that suppression of favorable evidence material to guilt or punishment by the prosecutor is a violation of the due process right to fair trial per the Fourteenth Amendment.

[16] "'Allen' refers to case *Allen v. United States*, [174 U.S. 492, 17 S. Ct. 154, 41 L. Ed. 2d 528] (1986).   The term is used generally in reference to supplemental instructions urging a jury to forego their differences and come to a unanimous decision."   *United States v. Eghobor*, 812 F.3d 352, 357 n.2 (5th Cir. 2015) (quoting *United States v. Bottom*, 638 F.2d 781, 784 n.4 (5th Cir. 1981)).   The Allen charge, sometimes referred to as "dynamite charge," essentially informs a deadlocked jury that the issues a present jury is confronting and discussing will be the same for a future jury and to essentially keep deliberating while considering that the burden is on the government to prove the case beyond a reasonable doubt.   *See* Fifth Circuit Pattern Jury Instructions (Criminal) § 1.45 (2015 edition).   The providing of the Allen charge is within the discretion of the trial judge.   *United States v. Allard*, 464 F.3d 529, 537-36 (5th Cir. 2006); *see also Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006) (noting that while "such a charge is permissible in both the federal system and Texas courts, trial courts [in Texas] must be careful to word it and administer it in a non-coercive manner.")

[17] *See supra* p. 8 for the Court's instruction to the deliberating jury.

Counsel provided ineffective assistance of counsel because he failed to raise the issue of the incorrect jury instruction in Petitioner's appeal. (*Id.* at 18.) Petitioner also claimed his Trial Counsel provided ineffective assistance of counsel when he advised Petitioner on the plea deal offered to Petitioner at the close of trial (*id.* at 17); Trial Counsel failed to object to the instruction given to the jury while they deliberated (*id.* at 20); and Trial Counsel failed to object when the State offered certain evidence. (Dkt. No. 6-9 at 20.) Finally, in Ground Eight, Petitioner claimed there had been prosecutorial misconduct, alleging that the prosecutor encouraged Garcia to lie on the stand. (*Id.* at 14.) The Court of Criminal Appeals dismissed the subsequent habeas action with citation to article 11.07 § 4(a)-(c) of the Texas Code of Criminal Procedure and without written order on May 1, 2019.[18] (Dkt. No. 6-8.)

In Petitioner's third state application for habeas, signed by him on June 15, 2019, he again claimed his Habeas Counsel was ineffective. (Dkt. No. 6-13 at 26, 36.) Petitioner alleged that his Habeas Counsel failed to argue that Petitioner's Trial Counsel had been ineffective because Trial Counsel failed to request an Allen charge and Trial Counsel had been ineffective for having filed a "meritless" motion for a new trial "when reversible error existed" based on a juror's affidavit that the verdict was not an expression of their opinion. (*Id.* at 26, 28.) Further, Petitioner alleged that Habeas Counsel was ineffective for failing to argue that Appellate Counsel failed to argue that the trial court provided an improper instruction to the jury and did not appropriately give the jury a "cautionary instruction," advising "that they were not required to

---

[18] Under Texas law, a successive habeas petition will not be considered unless "the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application … because the factual or legal basis for the claim was unavailable"; or "by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt." Tex. Code Crim. Proc. Ann. art. 11.07 § 4(a)(1), (2) (West 2015). Thus, this is a denial by the Texas Court of Criminal Appeals under the abuse of writ doctrine codified in article 11.07, § 4(a).

surrender their conscientiously held beliefs." (*Id.* at 30.)   The Honorable State District Judge Baldemar Garza denied Petitioner's third request for habeas relief.   (*Id.* at 66.)   In denying the application, the reviewing state court judge adopted the State's Memorandum, Findings of Fact, and Conclusions of Law.   (Dkt. No. 6-13 at 66.)   Said Memorandum set forth that the application should be denied because the claim of ineffective assistance of Habeas Counsel could not overcome the writ bar, which prohibits successive claims unless certain conditions are met under article 11.07 § (4), and that said claims are not cognizable for habeas review.   (Dkt. No. 6-13 at 60-63.)   Petitioner's third state application for habeas was denied by the Texas Court of Criminal Appeals with citation to article 11.07 § (4)(a)-(c)[19] and without written order in August 2019. (Dkt. No. 6-12.)

Petitioner filed a federal habeas corpus petition on August 17, 2020.   (Dkt. No. 1.)

## II.    Summary of the Pleadings

Petitioner asserts two grounds in his § 2254 petition.   First, he claims actual innocence. He cites "newly presented evidence" as supporting his contention that he is innocent.   (Dkt. No. 1 at 6.)   Second, Petitioner claims ineffective assistance of counsel, in which he argues two points: (1) his Habeas Counsel failed to raise the issue of the newly discovered evidence, and (2) Trial Counsel failed to object when the trial court did not give the deadlocked jury a "cautious instruction."   (*Id.*)   Petitioner has raised the claim of actual innocence and the claim that Trial Counsel failed to object when the trial court did not give a "cautious instruction" in the second state habeas application.   (Dkt. No. 6-9 at 9, 20.)

In support of the present habeas petition, Petitioner offers two affidavits previously relied upon in state proceedings.   The first, the Garcia Affidavit, dated November 6, 2007, is signed by

---

[19] *See supra* note 18.

a witness who testified in the case against Petitioner.   (Dkt. No. 1 at 12.)   As noted, the witness, Irasema De La Cruz Garcia, claims she was coerced by police into signing a statement that she did not write.   (*Id.*)   The second affidavit Petitioner offers, the Lopez Affidavit, is signed by a juror. (*Id.* at 14.)   The Lopez Affidavit was signed on November 21, 2000.   (*Id.* at 15.)   In the affidavit, the juror, Nancy Lopez, states that she "did not then, and [does] not now, feel the state proved its case" against Petitioner.   (*Id.* at 15.)   She voted with the majority because she believed she had to.   (*Id.*)   Additionally, Ms. Lopez claims that (1) the jurors considered exhibits not in evidence, and (2) the jury foreperson would not submit the jury's questions to the court because "she didn't want to be a nuisance to the Court."   (Dkt. No. 1 at 15.)   Petitioner included the Lopez Affidavit in his appeal (Dkt. No. 5-4 at 24), and his second (Dkt. No. 6-9 at 31) and third (Dkt. No. 6-13 at 40-41) state applications for habeas relief.   He included the Garcia Affidavit in his first (Dkt. No. 6-7 at 47-48) and second (Dkt. No. 6-9 at 29) state applications for habeas relief.

In its response, filed November 16, 2020, Respondent argues that Petitioner's actual innocence and ineffective assistance of counsel claims are barred by the statute of limitations, and Petitioner is not entitled to equitable tolling.   (Dkt. No. 4.)   Respondent moves for summary judgment.   (*Id.* at 1).

On December 18, 2020, Petitioner filed a response to the State's Motion for Summary Judgment.   (Dkt. No. 7.)   In it, he asserts that he is suffering from wrongful incarceration (*id.* at 6) and he disputes the Respondent's assertions that his claims are time barred.   (*Id.* at 2-6.) Petitioner's overall response to Respondent's Motion for Summary Judgment can be grouped into four categories: Petitioner is entitled to statutory tolling under 28 U.S.C. § 2244(d)(1)(A-D); Petitioner is entitled to equitable tolling; Petitioner is innocent; and other miscellaneous claims, including allegations that the trial court gave an incorrect jury instruction and withheld evidence.

(*Id.*)  To support these assertions, he maintains that the trial court's jury instructions, which lead to his conviction, constituted reversible error (*id.* at 3); the ineffective assistance of counsel he received and his wrongful incarceration entitle him to tolling of limitations (*id.* at 3-4); his claims are based on new evidence (*id.* at 5-6); and Petitioner is innocent (*id.* at 6).

## APPLICABLE LAW & ANALYSIS

### I.   Summary Judgment Review

Respondent has formally filed a Motion for Summary Judgment.   Summary judgment is appropriate if the pleadings and evidence show that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).   Once the movant for summary judgment presents "a properly supported motion for summary judgment, the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."   *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (citation omitted).   Within this review, a district court must construe disputed facts in a light favorable to the nonmoving party.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 19 L. Ed. 2d 202 (1986).   Further, a court must view summary judgment motions through "the prism of the substantive evidentiary burden."   *Id.* at 254.

Within the habeas context, the civil rules of procedure apply so long as there is not a conflict with the federal rules governing habeas proceedings.   *Banister v. Davis*, --- U.S. ---, 140 S. Ct. 1698, 1705, 207 L. Ed. 2d 58 (2020) (citing Fed. R. Civ. P. 81(a)(4) and Rule 12 of Rules Governing § 2254 Cases).   Therefore, these claims are reviewed pursuant to Fed. R. Civ. P. 56(a) unless there is a noted conflict with federal rules governing § 2254 cases.

### II.   28 U.S.C. § 2254

An application for a writ of habeas corpus by a person in custody under the judgment of a state court can only be granted on grounds that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). Federal habeas proceedings must honor the "presumption of finality and legality [that] attaches to [a petitioner's] conviction and sentence." *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983). Relief, therefore, is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *see also* 28 U.S.C. § 2254(b)(1)(A), (c). The exhaustion requirement "is grounded in principals of comity and reflects a desire to protect the state courts' role in the enforcement of federal law." *Castille v. Peoples*, 489 U.S. 346, 349, 109 S. Ct. 1056, 103 L. Ed. 2d 380 (1989) (quotation marks and citation omitted). The rule has been "[c]odified since 1948 in 28 U.S.C. § 2254" and "while not a jurisdictional requirement [the rule] creates a strong presumption in favor of requiring the prisoner to pursue his available state remedies." *Id.* (quotation marks, internal citations and footnote omitted). When a petitioner has properly raised a federal constitutional claim before the state courts, "and the state courts have adjudicated the merits of their merits, AEDPA provides for

a deferential federal review." *Ramey v. Davis*, 314 F. Supp. 3d 785, 802 (S.D. Tex. 2018.)

If a petitioner fails to adequately set forth the claim for review before the state court said petitioner has not exhausted his state remedies and is precluded from bringing forth the claim for the first time in federal court. *See* 28 U.S.C. § 2254(b)(1). Similarly, if the claim is reviewed but the state court rejects on procedural grounds, the claim is also barred from federal habeas review. *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). However, the federal bar of review in each instance can be set aside if the petitioner can establish "cause" for the noted default and "actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); *see also Wainwright v. Sykes*, 433 U.S. 72, 82-84, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).

"While 'the Framers considered the writ a vital instrument for protection of individual liberty,' … federal courts traditionally rely on principles of finality, comity, and federalism to narrow the scope of federal habeas review." *McGowen v. Thaler*, 717 F. Supp. 2d 626, 637 (S.D. Tex. 2010) (quoting *Boumediene v. Bush*, 553 U.S. 723, 743, 128 S. Ct. 2229, 171 L. Ed. 2d 41 (2008)).

Likewise, the application must also be timely filed as well.

## III.    Statute of Limitations and Equitable Tolling

AEDPA established a one-year period for filing habeas corpus petitions by persons in custody pursuant to the judgment of a state court. 28 U.S.C. § 2244(d)(1). In most cases, the one-year limitation period runs from the "date on which the judgment became final by the

conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[20]

In the present action, Petitioner was sentenced on November 3, 2000. (Dkt. No. 1.) Petitioner timely appealed and his conviction was affirmed on April 3, 2002, by the Fourth Court of Appeals. (Dkt. No. 4 at 2.) On September 11, 2002, the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review. (*Id.* at 2-3.) The language of § 2244(d)(1)(A) provides that a decision becomes final "by the conclusion of direct review or the expiration of the time for seeking such review." The "conclusion of direct review" occurs when the Supreme Court either rejects the petition for certiorari or rules on its merits. *Jimenez*, 555 U.S. at 119-20; *see also Roberts*, 319 F.3d at 694. Or, if no petition for certiorari is filed, judgment becomes final by "the expiration of the time for seeking such review." *Roberts* at 694 (quoting § 2244(d)(1)). Consequently, Petitioner's judgment became final on December 10, 2002, which marked the expiration of the ninety-day period in which Petitioner could have sought further review with the Supreme Court.

---

[20] The complete limitations are codified at 28 U.S.C. § 2244(d)(1) as follows:

A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Absent any tolling, the AEDPA one-year limitation period expired on December 10, 2003, and Petitioner's present petition, filed August 17, 2020 (Dkt. No. 1), comes almost seventeen years too late.    In his response to Respondent's Motion for Summary Judgment, Petitioner contends that he is entitled to statutory and equitable tolling.    Accordingly, the possibility of both statutory tolling, pursuant to 28 U.S.C. § 2244(d)(1)(A-D), and equitable tolling will be considered.

### a.  Statutory Tolling

AEDPA establishes a one-year limitation period for state prisoners to file for federal habeas relief, which "run[s] from the latest of" four specified dates.    28 U.S.C. § 2244(d)(1)(A-D). Petitioner puts forth grounds for statutory tolling pursuant to each possible avenue available in § 2244(d)(1).

### i.  28 U.S.C. § 2244(d)(1)(A)

Under § 2244(d)(1)(A), the one-year limitation period begins to run from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."    Petitioner's judgment became final on December 10, 2002. Accordingly, the period for filing a federal habeas petition expired on December 10, 2003. According to Petitioner, this is inconsistent with the Supreme Court's holding in *Gonzalez v. Thaler*, 565 U.S. 134, 132 S. Ct. 641, 181 L. Ed. 2d 619 (2012).    (Dkt. No. 7 at 3.)    He argues, "the Supreme Court held that a judgment is final when all options to appeal have expired or all appeals have been denied."    (*Id.*)    Petitioner unfortunately misunderstands the Court's ruling in *Thaler*.    In *Thaler*, the Court affirms that, for a petitioner who does not pursue direct review all the way to the Supreme Court, judgment becomes final "when the time for pursuing direct review in [the Supreme] Court, or in state court, expires."    565 U.S. at 150.    In the present case, judgment became final on December 10, 2002, when the window to file for certiorari expired, and the

limitation period expired the following year on December 10, 2003.   The Court's opinion in *Thaler* supports this conclusion.   *Thaler* does not support Petitioner's alternative theory that the limitation period is tolled for as long as Petitioner would like to continue to file appeals. Consequently, Petitioner cannot now bring this federal habeas corpus action, filed August 17, 2020, and claim that the limitation period has been tolled pursuant to § 2244(d)(1)(A).

### ii.   28 U.S.C. § 2244(d)(1)(B)

Petitioner also cites § 2244(d)(1)(B) as supporting his right to statutory tolling.   (Dkt. No. 7 at 3.)   Pursuant to § 2244(d)(1)(B), the one-year limitation period may begin to run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action."   Petitioner claims his ineffective assistance of counsel and his present incarceration constituted impediments to him filing the present action.   (*Id.* at 3-4.)

First, "[a] court-appointed attorney is not a state actor, meaning that the conduct of the attorney cannot be considered an impediment to filing an application created by state action," and therefore, ineffective assistance of counsel cannot toll the limitations period for filing a federal habeas petition.[21]   *Milliron v. Dir., TDCJ-CID*, 75 F. Supp. 3d 701, 705 (E.D. Tex. 2014).

---

[21]  In the context of procedural default – when a petitioner cannot bring forward a claim for habeas review because it was not brought up in state court proceedings for review – there is a very narrow exception where ineffective assistance of counsel may be utilized to overcome said procedural default.   "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."   *Martinez v. Ryan*, 566 U.S. 1, 17, 132 S. Ct. 1309, 182 L. Ed. 2d 272 (2012); *see also Trevino v. Thaler*, 569 U.S. 413, 429, 133 S. Ct. 1911, 185 L. Ed. 2d 1044 (2013) (expanding *Martinez* exception to states such as Texas where the "procedural framework" is such that "it is highly unlikely … that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of counsel on direct appeal.").   Even though ineffective assistance of counsel may show cause for failure to bring a claim before state court for review, a petitioner would still need to show prejudice or harm from such failure.   *Martinez*, 566 U.S. at 10.   The holding in *Martinez* is inapplicable for it is a

Second, Petitioner's present incarceration is not enough to justify statutory tolling pursuant to § 2244(d)(1)(B).   Incarceration alone is not an impediment.   To invoke statutory tolling under § 2244(d)(1)(B), a prisoner must show that: (1) he was subject to state action (2) that violated the Constitution or federal law and (3) prevented him from filing a timely petition.   *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003).   Petitioner has been able to file a state appeal response on his own while represented by counsel.[22]   Petitioner has also been able to file three detailed state applications for habeas relief and the present § 2254 petition for relief.   Being incarcerated has not impeded the petitioner in the state proceedings nor has Petitioner explained how being incarcerated has prevented him from timely filing the habeas petitions; therefore, under these circumstances, § 2244(d)(1)(B) is unavailable to Petitioner.   *Cf. Guzman v. Dretke*, CIV.A.3:05-CV-954-L, 2006 WL 36858, at *3 (N.D. Tex. Jan. 4, 2006) ("where a petitioner filed his habeas petition prior to the date he alleges the state-created impediment was removed…, section 2244(d)(1)(B) is unavailable [to him]") (citing *Felder v. Johnson*, 204 F.3d 168, 171 n.9 (5th Cir. 2000)).

In sum, Petitioner fails to show that he was prevented from filing a petition by state action in violation of the Constitution or federal law.

### iii.   28 U.S.C. § 2244(d)(1)(C)

Petitioner suggests he is entitled to statutory tolling under § 2244(d)(1)(C).   (Dkt. No. 7 at 4-5.)   Pursuant to § 2244(d)(1)(C), the limitation period may begin to run from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has

---

narrow exception that does not apply to overcoming a statutory limitation but instead procedural default in connection to state court proceedings.

[22] *See supra* note 10.

been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Petitioner claims that "any court can make a Supreme Court decision retroactive for this third provision … it doesn't have to be the Supreme Court itself." (Dkt. No. 7 at 5.) Further, he claims "statutory interpretation cases always apply retroactively." (*Id.*)

To support this contention, he cites *United States v. Peter*, 310 F.3d 709 (11th Cir. 2002). However, *Peter* is not relevant to the case at hand. First, *Peter* is a case out of the Eleventh Circuit and, as a result, it is not binding on this court. *Avelar-Oliva v. Barr*, 954 F.3d 757, 765 (5th Cir. 2020) (explaining that decisions issued by other circuits are not binding in the Fifth Circuit). Second, the facts of *Peter* do not apply. In *Peter*, the Eleventh Circuit vacated Michael J. Peter's prior conviction for conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act (RICO). Peter had pled guilty to mail fraud per 18 U.S.C. § 1341 in connection to the RICO allegation and admitted to "misrepresentations in license applications he mailed to the Florida Division of Alcoholic Beverages and Tobacco." *Peter*, 310 F.3d at 711. Subsequently, in *Cleveland v. United States*, the Supreme Court held that the offense of mail fraud "requires that the object of the fraud 'be property in the hands of the victim,'" and, generally, state and municipal licenses are not property in the hands of the victim for purposes of mail fraud. *Id.* (quoting *Cleveland*, 531 U.S. 12, 15, 121 S. Ct. 365, 148 L. Ed. 2d 221 (2000)). As a result of the Court's holding in *Cleveland*, Peter's conviction no longer constituted a federal crime; as such, Peter was successful in contesting the judgment by filing a writ of error coram nobis even though he had completed serving the sentence. *Id.* The *Peter* Court recognized, "[d]ecisions of the Supreme Court construing substantive federal criminal statutes must be given retroactive effect," and determined Peter's conviction was void. *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 620-21, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998)). In other words, when the Supreme Court sets

forth that a crime is no longer a crime, those previously convicted and sentenced can subsequently file a writ of error coram nobis to invalidate the judgment. *Id.* *Peter* is thus an example of a Supreme Court ruling directly affecting a previous conviction based on the Court's present statutory interpretation of a criminal statute; however, it is neither instructive nor applicable to Petitioner's argument.

Petitioner's argument fails under *Peter* and § 2244(d)(1)(C) because Petitioner does not say which case he believes should apply retroactively.  Petitioner filed this petition *pro se* (Dkt. No. 1) and *pro se* pleadings are held to less stringent standards than those drafted by practicing attorneys.  *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972); *see also United States v. Pena*, 122 F.3d 3, 4 (5th Cir. 1997) ("Because [Plaintiff] is *pro se*, [the Court will] construe his pleadings liberally."); *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 472 & n.16 (5th Cir. 1996) (a "*pro se* complaint is to be construed liberally.").   However, "*pro se* plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019) (citations omitted).  A *pro se* litigant must make some legal argument.  *Hawbecker v. Hall*, 88 F. Supp. 3d 723, 726 (W.D. Tex. 2015) (citations omitted).   Petitioner does not state the case that would trigger § 2244(d)(1)(C) and toll the limitations period.   Nor does Petitioner state a constitutional right that has been newly recognized and made retroactively applicable.   Consequently, Petitioner has failed to make a legal or factual argument in connection to *Peter* and, without more, Petitioner's argument pursuant § 2244(d)(1)(C) fails.

### iv.  28 U.S.C. § 2244(d)(1)(D)

In his response to Respondent's Motion for Summary Judgment, Petitioner claims that the limitation period should be tolled pursuant to § 2244(d)(1)(D), which allows for tolling if some

factual predicate is discovered that could not have been previously uncovered.   Specifically, §

2244(d)(1)(D) provides that the AEDPA limitation period may begin to run again after judgment

becomes final, starting on "the date on which the factual predicate of the claim or claims presented

could have been discovered through the exercise of due diligence."   The newly discovered factual

predicates that Petitioner refers to are the Lopez and Garcia Affidavits.   (Dkt. No. 7 at 6.)   The

Lopez Affidavit was signed on November 21, 2000, and the Garcia Affidavit was signed on

November 6, 2007.   The Lopez Affidavit does not delay the running of the limitations here

because the factual predicate, that a juror did not believe the State proved its case, was known to

Petitioner in November 2000, more than two years before Petitioner's judgment became final on

December 10, 2002.   The Garcia Affidavit is similarly unhelpful.   Even assuming the Garcia

Affidavit warranted tolling the statute of limitations pursuant to § 2244(d)(1)(D), Petitioner is still

bound by the one-year limitation period.   Because the Garcia Affidavit was signed November 6,

2007, Petitioner should have filed his § 2254 claim no later than November 6, 2008.

Petitioner cites to *Johnson v. United States*, 554 U.S. 295, 128 S. Ct. 2531, 171 L. Ed. 2d

424 (2005), as instructive on how to appropriately construe § 2244(d)(1)(D) in support of his

petition.   (Dkt. No. 7 at 5.)   *Johnson* is instructive but not for why Petitioner cites to the case.   In

*Johnson*, the petitioner sought to timely file a habeas petition under 28 U.S.C. § 2255 within a year

from which a state court had vacated his prior state convictions pursuant to 28 U.S.C. §

2255(f)(4).[23]   One of petitioner's prior state convictions was utilized to enhance a federal drug

---

[23] In *Johnson*, the Court applied 28 U.S.C. § 2255(f)(4), which is applicable to habeas proceedings
for those in federal custody, to determine whether the limitation period should be tolled because
of a newly discovered factual predicate.   Similarly, here, Petitioner claims that the limitation
period should be tolled because of a newly discovered factual predicate.   To support his claim,
Petitioner cites 28 U.S.C. § 2241(d)(1)(D), which is applicable to a person "in custody pursuant to
judgment of a State court," such as Petitioner.   Each section is textually similar and, as such, they
are interpreted in the same way by the courts.   *Compare* 28 U.S.C. § 2255(f)(4), *with* 28 U.S.C. §
2241(d)(1)(D); *see also United States v. Jackson*, 470 F. App'x 324, 327 (5th Cir. 2012) (citing to

trafficking sentence as a career offender; thus, the petitioner, Robert Johnson, Jr., sought to collaterally attack his federal sentence on the grounds that his state conviction has been vacated. In fact, seven of Johnson's prior state convictions had been vacated as the state court made a finding there was no affirmative showing that Johnson had waived counsel in each of the cases. *Johnson*, 544 U.S. at 298-301.   Within 3 months of the convictions being vacated, Johnson filed his federal habeas petition.   The issue before the Supreme Court was whether this was timely under 28 U.S.C. § 2255(f)(4).   The Supreme Court ultimately held it could be timely, i.e. vacating a state court sentence *may* trigger a renewal of the one-year limitations period under AEDPA, but only if reasonable diligence has been executed in obtaining the vacatur of the state convictions. The date on which a state conviction is vacated is a new "fact" on which the one-year limitation could begin from under § 2255(f)(4); however, "only if the petitioner has shown due diligence in seeking the order" vacating the state conviction.   *Johnson*, 544 U.S. at 302.   Since Johnson had waited three years from the time he was convicted in federal court, and aware of the sentencing enhancement, to vacate said convictions, reasonable due diligence was lacking.   The Supreme Court noted that "we have never accepted *pro se* representation alone or procedural ignorance as an excuse for prolonged inattention when a statute's clear policy calls for promptness, and on this record, we think Johnson fell far short of reasonable diligence in challenging the state conviction." *Johnson*, 544 U.S. at 311.   Waiting over ten years to present claims Petitioner was aware of from 2000 and 2007 similarly demonstrates a lack of reasonable due diligence.   In sum, contrary to his claims and reliance on *Johnson*, statutory tolling under § 2244(d)(1)(D) is not now available to Petitioner.

### v.   28 U.S.C. § 2244(d)(2)

---

case law analyzing § 2244(d)(1)(D) when reviewing an application of § 2255(f)(4)); *United States v. Rodriguez*, 858 F.3d 960, 962 (5th Cir. 2017), as revised (June 14, 2017) (same).

Pursuant to section 2244(d)(2), the one-year limitation period is tolled during the time in which "a properly filed application for State post-conviction or other collateral review ... is pending." 28 U.S.C. § 2244(d)(2).   Petitioner filed several relevant, collateral proceedings at the state level, however, none of Petitioner's state applications for habeas corpus tolled the limitation period.   Petitioner did not file state applications until 2007 and 2019, years after the expiration of the limitation period.   Petitioner's state filings cannot toll the one-year limitation period because the period expired before Petitioner's state court proceedings began.   *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (holding that the "state habeas application did not toll the limitation period under § 2244(d)(2) because it was not filed until *after* the period of limitation had expired" (emphasis original)); *see also Flores v. Quarterman*, 467 F.3d 484, 485-86 n.2 (5th Cir. 2006) (same) (citing *Scott*); *Richards v. Thaler*, 710 F.3d 573, 576 (5th Cir. 2013) (same) (citing *Scott*). In effect, because the limitation period was not tolled by the state filings, Petitioner's § 2254 petition is barred by the AEDPA statute of limitations.

### b.  Equitable Tolling

In his response to Respondent's Motion for Summary Judgment, Petitioner claims that, even if none of the § 2244(d) exceptions apply, his claims are entitled to equitable tolling because he has been pursuing his rights diligently and extraordinary circumstances prevented Petitioner from filing.   (Dkt. No. 7 at 6.)   To support the contention that he is entitled to equitable tolling, Petitioner states that he had to "hire through his attorney an investigator to find then retrieve ... the juror's testimony/affidavits."   (*Id.*)

It is well-established that in appropriate circumstances AEDPA's one-year statute of limitations can be equitably tolled.   *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010).   "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that

he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct 1807, 161 L. Ed. 2d 669 (2005)). Regarding the "pursuing his rights diligently" requirement, Petitioner must demonstrate "'reasonable diligence,' not 'maximum feasible diligence.'" *Jones v. Stephens*, 541 F. App'x 499, 503 (5th Cir. 2013) (quoting *Holland*, 560 U.S. at 653). "[N]either excusable neglect nor ignorance of the law is sufficient to justify equitable tolling." *Id.* at 503 (quoting *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002)). Further, equitable tolling "is not intended for those who sleep on their rights." *Id.* (quoting *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012)).

Here, Petitioner was not reasonably diligent in pursuing his rights. Petitioner claims that hiring a private investigator constituted an "extraordinary circumstance" that entitles him to equitable tolling. (Dkt. No. 7 at 6.) However, Petitioner did not file his first state application until 2007, despite having the Lopez Affidavit in November 2000. Because Petitioner had the Lopez Affidavit in 2000, he cannot expect now, twenty years later, that it should trigger equitable tolling.

Similarly, regarding the Garcia Affidavit, which was signed November 6, 2007, Petitioner has simply waited too long to justify equitable tolling. Although Petitioner promptly filed a state application for habeas upon the execution of the Garcia Affidavit, judgment became final in that case in 2008, and cert was denied in April 2009. Petitioner then waited eleven years before filing this § 2254 petition.[24] *See Manning*, 688 F.3d at 185 (noting in a case where petitioner did nothing

---

[24] Petitioner filed his first state habeas application on December 10, 2007. It was denied by the Court of Criminal Appeals in November 2008. Petitioner remained inactive until he filed his second and third state habeas applications in February and June of 2019, respectively. He filed the present § 2254 petition on August 7, 2020. While Petitioner was not wholly inactive for the period between filing his first state application for habeas and his present petition for § 2254 relief, he was inactive for the period between April 2009 and February 2019, or 118 months.

for the nineteen months after his judgment became final that the Fifth Circuit was unaware of "any other decisions holding… that such an extended period of inactivity constitutes due diligence under AEDPA.").   Petitioner's second and third state applications for habeas, both filed in 2019, are not enough to show diligence because they came more than ten years after Petitioner discovered the Garcia Affidavit.   Presently, there are years-long gaps in the timeline of actions taken by Petitioner.

Petitioner claims that he is entitled to equitable tolling because he had to hire a private investigator to discover "the juror's testimony/affidavits."   (Dkt. No. 7 at 6.)   But both affidavits were obtained by 2007.   Petitioner does not explain how he has pursued his rights with reasonable diligence in the years since the discovery of each affidavit.   Without more, equitable tolling does not apply.

### c.   Actual Innocence as Basis for Habeas Review

Petitioner asserts that he is innocent.   (Dkt. No. 1 at 6.)   In his response to Respondent's Motion for Summary Judgment, Petitioner further claims that his actual innocence claims are an exception to the AEDPA time limitations.   (Dkt. No. 7 at 6.)   He states, "that a fundamental miscarriage of justice can excuse procedural bars to relief under the AEDPA standards," citing *McQuiggin v. Perkins*, 569 U.S. 383, 133 S. Ct. 1924, 185 L. Ed. 2d 1019 (2013).   (Dkt. No. 7 at 2.)   He contends that "finality should yield to avoid wrongfully incarcerating" Petitioner because he is innocent.   (*Id.*)

A claim of actual innocence may provide "a gateway through which a petitioner may pass" when the limitation period has elapsed.   *McQuiggin*, 569 U.S. at 386.   However, "tenable actual-innocence gateway pleas are rare."   *Id.*   To meet the threshold requirement and "invoke the miscarriage of justice exception to AEDPA's statute of limitations, … a petitioner 'must show that

it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).    Further, an "[u]nexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." *McQuiggin*, 569 U.S. at 399.   In other words, "[a] court may consider how the timing of the submission and the likely credibility of a [petitioner's] affiants bear on the probable reliability of … evidence [of actual innocence]." *Id.* at 399 (quoting *Schlup*, 513 U.S. at 332).    Thus, a court can consider "a petitioner's diligence, not discretely, but as part of the assessment whether actual innocence has been convincingly shown." *Id.* at 400.   This standard under *Schlup* is "demanding" and "[t]he gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 401 (quoting *Schlup*, 513 U.S. at 316.)

Here, the new evidence Petitioner presents is the Garcia Affidavit.   In her 2007 affidavit, she discredits her own trial testimony by claiming she was coerced into signing a statement that she did not write.   However, she does not fully recant the whole statement.   Nor does she recant important pieces of her trial testimony, including her testimony that Petitioner had done something he was not supposed to do.

At trial, Garcia told the jury she saw Petitioner on January 12, 2000 (Dkt. No. 5-14 at 45; Trial Tr. vol. 5, 167-68, Oct. 31, 2000); he seemed nervous (*id.* at 45, 46; Trial Tr. vol. 5, 168, 171, Oct. 31, 2000); he asked for money (*id.* at 46; Trial Tr. vol. 5, 172, Oct. 31, 2000); "he had done something he wasn't supposed to" (*id.*; Trial Tr. vol. 5, 172, Oct. 31, 2000); "he had shot somebody…" (*id.* at 47; Trial Tr. vol. 5, 174, Oct. 31, 2000); Petitioner had blood on his clothes (*id.* at 50; Trial Tr. vol. 5, 186, Oct. 31, 2000); and she thought Petitioner had a gun with him (*id.*

at 47; Trial Tr. vol. 5, 175, Oct. 31, 2000).   In her affidavit, she only explicitly disputes seeing (1) bloodstains on Petitioner's clothing, and (2) an object in Petitioner's waistband that could have been a gun.   (Dkt. No. 1 at 12 ("I denied that I saw bloodstains on his clothes or an object that could have been a gun.").)   She adds that an officer wrote portions of her statement, which she was coerced into signing because she was scared.   (*Id.*)   At trial, Garcia was told she had to testify consistently with the written statement.   (*Id.*)

The Garcia Affidavit is not enough to establish a tenable actual-innocence plea.   In short, Garcia does not recant key evidence connecting Petitioner to the shooting, specifically, she does not recant that Petitioner appeared nervous; Petitioner made a mistake and did something Petitioner was not supposed to do; or that Petitioner asked for money.   Further, the affidavit was executed seven years after Garcia testified at trial in October 2000.   Considering the timing of the affidavit, the timing of the present federal habeas petition, and Garcia's close relationship with Petitioner, which began when they were children,[25] there are significant questions regarding the credibility of the affidavit.   This is especially true considering that only parts of the original statement are recanted and only now does Garcia make a claim of police misconduct.   *See McQuiggin*, 569 U.S. at 399 (noting that untimeliness does bear on the credibility of evidence proffered to show actual innocence); *see also McGowen*, 717 F. Supp. 2d at 663 ("A petitioner, however, must still show that the evidence is credible and reliable." (citing *Schlup*, 513 U.S. at 324)).   For these reasons, this is not one of the rare cases in which an actual innocence exception should apply as the proffered evidence is not reliable and credible enough to call into question the outcome of the trial. Petitioner is not entitled to habeas review based on his claim of actual innocence under *McQuiggin*.

### d.  Miscellaneous Arguments

---

[25] *See supra* note 13.

Lastly, Petitioner appears to make three additional arguments in his response to Respondent's Motion for Summary Judgment. Petitioner claims that the trial court provided incorrect instructions to the jury which "affected the outcome of the case" and the trial court withheld evidence and, as a result, violated Petitioner's right to due process.[26] (Dkt. No. 7 at 4.) Petitioner also claims that his declaration of innocence under penalty of perjury is sufficient to overcome a request for summary judgment by Respondent. (*Id.* at 8.)

Petitioner relies on two cases issued by the Supreme Court of Kansas in support of his claim that the trial court provided incorrect jury instructions – *State v. Barrett*, 442 P.3d 492 (Kan. 2019) and *State v. Reyes*, 472 P.3d 78 (Kan. 2020). In each case in which a jury convicted each appellant of murder, the Kansas Supreme Court held that the respective trial courts committed reversible error for failing to provide proper self-defense instructions to the respective juries for consideration. *Barrett*, 442 P.3d at 500; *Reyes*, 472 P.3d at 83-84. Presumably, due to the recency of each case, Petitioner is citing these cases to revisit the issue of the jury instructions for this habeas petition. In Petitioner's first state habeas petition, Habeas Counsel argued that the trial court erred by not including the lesser included offense of felony murder, per Texas Penal Code § 19.02(b)(3), in the jury instructions.[27] (Dkt. No. 6-7 at 28.) The Court of Criminal Appeals was not persuaded.[28]

---

[26] Petitioner's claim can also be interpreted as claiming that the trial judge's failure to provide the proper jury instructions was the "withholding of such evidence/knowledge" that led to a due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). (Dkt. No. 7 at 8.) *Brady* applies to suppression of favorable evidence by government prosecutors and is not applicable to actions by trial judges; thus, Petitioner's reliance on *Brady* is misplaced.

[27] The trial judge instructed the jury on the elements of capital murder and the lesser included offense of murder and he set forth the same on the Form of Verdict. (Dkt. No. 5-15 at 60; Trial Tr. vol 8, 13-15, 19, Nov. 3, 2000); *see also* Tex. Penal Code Ann. §§ 19.02(b)(1) (murder) and 19.03 (a)(2) (capital murder in course of another crime) (West 2019).

[28] *See supra* p. 13.

The problem for Petitioner is two-fold.   First, cases issued by the state of Kansas interpreting Kansas statutes have no applicable or precedential value on cases in Texas.   As a result, the two Kansas cases cited by Petitioner cannot be considered as creating new case law that applies to Petitioner and, thus, warrants tolling of limitations under 28 U.S.C. § 2244(d)(1)(C). And, second, like Petitioner's claim based on the Garcia Affidavit, the claim of alleged error in the jury instructions provided at trial has not been pursued by Petitioner in a timely manner and equitable tolling is inapplicable for the reasons noted above.[29]

Petitioner cites *United States v. Cottage*, 307 F.3d 494 (6th Cir. 2002), to support his claim that the limitation period should be tolled due to withheld evidence.   (Dkt. No. 7 at 4.) Unfortunately for Petitioner, *Cottage* is also not helpful for the primary reason that it supports a finding that this court need not extend the limitation period based on Petitioner's allegations that the State withheld exculpatory evidence.   In *Cottage*, the Sixth Circuit held that the government's alleged failure to disclose *Brady* material did not create an impediment to filing a motion for collateral relief that justified tolling the limitation period.   *Cottage*, 307 F.3d at 500.   Further, it is not clear *what* evidence Petitioner believes was withheld from him.   In his original § 2254 petition, he complains that "newly presented evidence" was excluded at trial, but the newly presented evidence he puts forth are the two affidavits, by Lopez and Garcia, which he has had since, respectively, 2000 and 2007.   If the two affidavits contain the withheld evidence, Petitioner could have brought this claim within a year of discovering this new evidence.   He did not.   As a result, Petitioner's claim that the trial court or government prosecutor withheld evidence does not toll the limitations period either under the law or the facts of this case.

---

[29] *See supra* pp. 29-31.

Finally, Petitioner cites to *Cantwell v. Sterling*, 788 F.3d 507 (5th Cir. 2015), in support of the proposition that his declaration of innocence under penalty of perjury is sufficient to overcome Respondent's Motion for Summary Judgment. In *Cantwell*, the Fifth Circuit held that a petitioner's declaration under penalty of perjury must be credited on summary judgment. *Cantwell*, 788 F.3d at 509 n.1. Lee Cantwell, a Texas prisoner filed suit claiming prison officials were deliberately indifferent to his medical needs. Cantwell claimed that, in regard to the prison's two-step grievance process, he had filed a step-one grievance with prison officials but never heard back from them. *Id.* at 509. The State failed to set forth the grievance procedures to rebut Cantwell's claims and thus the trial court's grant of summary judgment was reversed. *Id.* at 509-10. Cantwell's statement without any response from the State was sufficient to set forth a factual issue of dispute to overcome a summary judgment motion. In this matter, by contrast, the Respondent has filed with the Clerk's Office the State court record. Said record, for noted reasons above, supports the claim that that Petitioner is severely tardy in the filing of this federal habeas petition.

### e. Petitioner's Claims of Ineffective Assistance of Counsel

Petitioner claims in his petition that Habeas Counsel for his first state habeas claim failed to raise the issue of actual innocence and his Trial Counsel "failed to object to trial judge's failure to give 'deadlock' jury a 'cautious instruction' in accordance with standard co[n]stitutional law. S[ix]th Amendment." (Dkt. No. 1 at 6.) Considering that there is no basis for statutory or equitable tolling, and because this § 2254 claim comes almost seventeen years after judgment became final for habeas review, Petitioner's claims of ineffective assistance of counsel, as well as claim of actual innocence, are time barred from review.

## CONCLUSION

### *Recommended Disposition*

After a careful review of the record and relevant law, Petitioner's claims are barred by the relevant statute of limitations and are not subject to equitable tolling or a demonstrative claim that failure to consider the underlying claims will result in a fundamental miscarriage of justice; therefore, the undersigned recommends that Respondent's Motion for Summary Judgment (Dkt. No. 4) be **GRANTED**. It is recommended that Petitioner's § 2254 petition (Dkt. No. 1) be **DISMISSED** with prejudice.

Finally, Petitioner's § 2254 case should be closed.

### *Certificate of Appealability*

It is recommended that the District Court deny a Certificate of Appealability. Petitioner may not appeal the final order of a habeas corpus proceeding "unless the circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). The § 2254 rules instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." R. Gov. Sec. 2254 Cases 11. Because the undersigned recommends the dismissal of Petitioner's § 2254 action, it is necessary to address whether Petitioner is entitled to a certificate of appealability ("COA").

A COA "may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003). When a claim is denied on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v.*

*McDaniel*, 529 U.S. 473, 484 ,120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002).   A petitioner may satisfy this requirement by showing, in the alternative, that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Jones*, 287 F.3d at 329.   "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the [petitioner] shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Petitioner's request to overcome the timely filing of the habeas petition is being denied for none of the statutory exemptions to the one-year limitation apply, equitable tolling is inapplicable, and Petitioner cannot establish a miscarriage of justice based on claim of actual innocence.   Reasonable jurists would not find it debatable that Petitioner has not set forth a valid claim of denial of a constitutional right or that the court was incorrect in its procedural ruling as to each of the claims being time-barred from habeas review.

Therefore, it is recommended that the District Court deny a COA.

### *Notice to the Parties*

Within 14 days after being served a copy of this report, a party may serve and file specific, written objections to the proposed recommendations.   28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).   Failure to file written objections to the proposed findings and recommendations contained in this report within 14 days after service shall bar an aggrieved party from *de novo* review by the District Court of the proposed findings and recommendations and from appellate review of factual

findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice.

The Clerk shall send a copy of this Order to Petitioner and counsel for Respondent.

**DONE** at McAllen, Texas, this 2nd day of April, 2021.

Juan F. Alanis
United States Magistrate Judge